IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| DARYL L. DAVIS, #802738 | § | |
| VS. | § | CIVIL ACTION NO. 9:07cv19 |
| DIRECTOR, TDCJ-CID, ET AL. | § | |

<u>REPORT AND RECOMMENDATION</u>
<u>OF UNITED STATES MAGISTRATE JUDGE</u>

Plaintiff Daryl L. Davis, a prisoner previously confined at the Polunsky Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was referred for findings of fact, conclusions of law and recommendations for the disposition of the cause of action.

The original complaint was filed on January 16, 2007. The Plaintiff complained that the Defendants failed to protect him from attacks by other inmates. On June 14, 2007, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Supervisor Chip Satterwhite, Warden Steven Swift and Nurse Kelly Maxwell testified under oath about prison policies and information contained in the Plaintiff's prison records.

The Plaintiff's problems began at the Polunsky Unit around May 22 or 23, 2006. Lt. Tucker called Officer McDuffie into his office in an effort to catch him as a dirty officer. Officer McDuffie was purportedly bringing contraband into the prison for inmates and accepting things for them as payment. Lt. Tucker told Officer McDuffie during the meeting that he might as well come clean because the Plaintiff had told him everything. The Plaintiff stressed that Lt. Tucker lied in telling Officer McDuffie he had reported on him. The Plaintiff, in turn, was labeled a snitch. Officer McDuffie allegedly then placed a hit on the Plaintiff. The Plaintiff was attacked on two occasions. The first attack occurred on May 27, 2006. Inmates belonging to the Mandingo Warrior gang attacked him with a broom stick. The second attack occurred on May 30, 2006. The Plaintiff was placed in transit after the second attack. Unit officials initiated a life endangerment study, which led to the Plaintiff's transfer to the Michael Unit. The Plaintiff testified that he never knew that his life was in danger. He added that unit officials initiated the study, and he was transferred.

The Plaintiff first became aware of a problem when Officer McDuffie told him he was "going to pay for that." The Plaintiff testified he had no idea what Officer McDuffie was talking about. On the following day, Lt. Tucker called him into his office and asked him why he was talking to an officer about his investigation. The Plaintiff testified that he did not know anything about Officer McDuffie and that he told Lt. Tucker he knew nothing about him. He believes that Lt. Tucker lied about him because he was angry that the Plaintiff had not reported anything about Officer McDuffie. The Plaintiff noted Officer McDuffie had seen him talking to Lt. Tucker in his office. He believes that Lt. Tucker used him as a scapegoat, and Officer McDuffie assumed that he was the snitch.

The first attack occurred on May 27, 2006. The Plaintiff was working as an SSI in a dayroom. He walked up one flight of stairs to look out of a window. The members of the Mandingo

Warrior gang approached him and said, "He knew what he did." The gang members attacked him. One of them had a broom and struck him with the handle. Sgt. Gilbert made them leave. The Plaintiff testified that he was suing Sgt. Gilbert for letting the inmates in the dayroom. They did not belong in that housing area and were out of place. The Plaintiff testified that he could not say whether Sgt. Gilbert let them in the dayroom in collusion with Officer McDuffie.

The second attack occurred on May 30, 2006. Once again, the Plaintiff was at work. The attack occurred while he was on a break. He was attacked with a sock that had a heavy metal object in it. The same members of the Mandingo Warrior gang plus one additional member attacked him this time. The officer in the picket called the sergeant, who had the Plaintiff placed in Prehearing Detention. He was taken to the infirmary and received nothing more than a band-aid. The first time he talked to prison officials about the incident was on June 8, 2006. He talked to the Unit Classification Committee, which kept him isolated until he was transferred to the Michael Unit in late August, 2007.

The Plaintiff testified that he sued Director Dretke because he failed to train and supervise his officers properly. Dretke oversees the prison system and is responsible for it. He testified that he could not say whether Director Dretke had any knowledge about the attack before it happened.

The Plaintiff testified that he sued Wardens Massey, Alford and Hirsch because they were responsible for the unit and failed to train the officers. He added that they should have confined all members of the Mandingo Warriors in administrative segregation.

The Plaintiff sued the following classification officers because they failed to provide a safe environment and failed to confine all members of the Mandingo Warriors gang in administrative segregation: Major Miller and Major Nelson.

The Plaintiff also sued the following gang intelligence officers: Officer Sheffield, Officer Price, Officer Dezeeuw, Officer Brisenio and Sgt. Neal. He sued them because they knew that the inmates who attacked him were members of the Mandingo Warriors.

The Plaintiff also sued the officers that were working in the area when he was attacked on May 27, 2006, including Captain Wickersham, Captain Sonsel, Lt. Price, Lt. Hindsman, Sgt. Gilbert, Officer Hewitt, Officer Rogers and Officer Seale. They failed to stop the inmates who attacked him from entering the dayroom. The inmates were out of place. The officers should have caught them and prevented them from entering the dayroom.

The Plaintiff also sued the officers that were working in the area when he was attacked on May 30, 2006. Once again, they could have prevented the attack if they had checked the identities of the gang members and had prevented them from entering the area where the Plaintiff was working. The gang members were out of place when they attacked the Plaintiff.

The Plaintiff testified that he submitted to the Court affidavits from two of the gang members and other affidavits from inmate witnesses. The affidavits were docketed as a motion for judicial notice of affidavit of facts (docket entry #15). In general, the affidavits noted that officers were investigating rumors that the Plaintiff was in danger before the attacks and that Officer McDuffie made comments that resulted in the Plaintiff being labeled a snitch.

Warden Swift testified under oath about two matters. He noted that gang members are classified into two type of groups. Security threat groups, such as the Mexican Mafia, pose serious security problems and all members are confined in administrative segregation. Clicks, on the other hand, are less of a problem. Members are confined in administrative segregation only on an individual basis. The Mandingo Warriors gang is classified as a click. The only Mandingo Warriors that are confined in administrative segregation are those that recruit others into the gang. Warden

Swift also testified that there is a large number of inmates moving in the hallways and it is hard to tell exactly where an inmate is going and where he belongs. He described it as a "big task" and identifying movement of the inmates is difficult. The Plaintiff noted that the attacks were right after count had cleared and that there was a large number of inmates were moving about.

Nurse Maxwell testified under oath from the Plaintiff's medical records. He testified that there were no entries in the records from May 27, 2006. There were entries from the attack on May 30, 2006. The injuries included three lacerations to the face. The injuries were cleaned and antibiotic ointment was applied. The Plaintiff subsequently complained about dizziness. He also had a history of dizziness, seizures and hypertension. He is being watched by neurology. A MRI was performed in February, 2007. The MRI was normal, but neurology is still watching him and a follow-up exam is due.

The Eighth Amendment affords prisoners protection against injury at the hands of other inmates. *Smith v. Wade*, 461 U.S. 30 (1983); *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Instead, the standard to employ is whether prison officials were "deliberately indifferent" to the safety needs of an inmate. *Id.*; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Mere negligence on the part of prison officials is not enough. *Id.* at 835. The deliberate indifference standard permits courts to

separate omissions that amount to an intentional choice from those that are merely unintentional oversights. *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997).

In the present case, the Plaintiff has alleged facts that arguably support an inference that Lt. Tucker and Officer McDuffie placed his life in danger. Actions attributed to them allegedly led to the two attacks on Plaintiff. They should answer the claims against them.

The Plaintiff's claims against the remaining Defendants should be dismissed. The Plaintiff sued the officers that were on duty in the area of the two attacks because they failed to detect and stop the inmates who attacked him. The inmates were out of place and should have been caught. The actions attributed to them, however, constituted at most negligence, as opposed to deliberate indifference.

The Plaintiff claims against classification and gang intelligence officers concerned their failure to confine all members of the Mandingo Warriors in administrative segregation. The Mandingo Warrior gang, however, is not viewed as serious a threat to security as gangs such as the Mexican Mafia, where all members are confined in administrative segregation. Members of the Mandingo Warriors are confined in administrative segregation only on a case by case basis. Prison systems have broad discretion in the classification of inmates, and the federal courts will not interfere with classification decisions except in extreme circumstances. *Jackson v. Cain*, 864 F.2d 1235 (5th Cir. 1989); *Young v. Wainwright*, 449 F.2d 338 (5th Cir. 1971). A disagreement with classification decisions is insufficient to establish a constitutional violation. *Neals v. Norwoood*, 59 F.3d 530, 533 (5th Cir. 1995). The Plaintiff does not have a basis for a claim because he believes that all members of the Mandingo Warriors should have been confined in administrative segregation, like all members of the Mexican Mafia.

Finally, the Plaintiff sued Director Dretke and the Polunsky Unit wardens because of the supervisory positions they hold. He argued that they failed to train and properly supervise their officers. They also failed to confine all members of the Mandingo Warriors in administrative segregation. In order to successfully plead a cause of action in a civil rights case, a plaintiff must enunciate a set of facts that illustrate the defendants' participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). None of these individuals participated in the alleged acts of misconduct. The only way they could possibly be implicated in these claims is through their supervisory capacity. Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition is satisfied. The claims against Director Dretke and Wardens Massey, Alford and Hirsch should be dismissed.

In conclusion, the Plaintiff should be permitted to proceed with his deliberate indifference claims against Lt. Tucker and Officer McDuffie. The claims against the remaining Defendants fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. Such claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

<u>Recommendation</u>

It is therefore recommended that the Plaintiff be permitted to proceed with his deliberate indifference claims against Lt. Wayne N. Tucker and Officer Michael R. McDuffie. The claims against the remaining Defendants should be dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in the report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within ten days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto Ass'n.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So **ORDERED** and **SIGNED** this **14** day of **June, 2007.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE