IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| DARYL L. DAVIS, #802738 | § | |
| VS. | § | CIVIL ACTION NO. 9:07cv19 |
| DIRECTOR, TDCJ-CID, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Daryl L. Davis, a prisoner previously confined at the Polunsky Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was referred for findings of fact, conclusions of law and recommendations for the disposition of the cause of action. The present Report and Recommendation concerns the Defendants' motion for summary judgment (docket entry #61) and the Plaintiff's response (docket entry #79).

Plaintiff's Allegations

The original complaint was filed on January 16, 2007. The Plaintiff complained that the Defendants failed to protect him from attacks by other inmates. On June 14, 2007, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The Plaintiff's problems began at the Polunsky Unit around May 22 or 23, 2006. Lt. Tucker called Officer McDuffie into his office in an effort to catch him as a dirty officer. Officer McDuffie was purportedly bringing contraband into the prison for inmates and accepting things for them as payment. Lt. Tucker told Officer McDuffie during the meeting that

he might as well come clean because the Plaintiff had told him everything. The Plaintiff stressed that Lt. Tucker lied in telling Officer McDuffie he had reported on him. The Plaintiff, in turn, was labeled a snitch. Officer McDuffie allegedly then placed a hit on the Plaintiff. The Plaintiff was attacked on two occasions. The first attack occurred on May 27, 2006. Inmates belonging to the Mandingo Warrior gang attacked him with a broom stick. The second attack occurred on May 30, 2006. The Plaintiff was placed in transit after the second attack. Unit officials initiated a life endangerment study, which led to the Plaintiff's transfer to the Michael Unit. The Plaintiff testified that he never knew that his life was in danger. He added that unit officials initiated the study, and he was transferred.

The Plaintiff first became aware of a problem when Officer McDuffie told him he was "going to pay for that." The Plaintiff testified he had no idea what Officer McDuffie was talking about. On the following day, Lt. Tucker called him into his office and asked him why he was talking to an officer about his investigation. The Plaintiff testified that he did not know anything about Officer McDuffie and that he told Lt. Tucker he knew nothing about him. He believes that Lt. Tucker lied about him because he was angry that the Plaintiff had not reported anything about Officer McDuffie. The Plaintiff noted Officer McDuffie had seen him talking to Lt. Tucker in his office. He believes that Lt. Tucker used him as a scapegoat, and Officer McDuffie assumed that he was the snitch.

The first attack occurred on May 27, 2006. The Plaintiff was working as an SSI in a dayroom. He walked up one flight of stairs to look out of a window. The members of the Mandingo Warrior gang approached him and said, "He knew what he did." The gang members attacked him. One of them had a broom and struck him with the handle. Sgt. Gilbert made them leave. They did not belong in that housing area and were out of place.

The second attack occurred on May 30, 2006. Once again, the Plaintiff was at work. The attack occurred while he was on a break. He was attacked with a sock that had a heavy metal object in it. The same members of the Mandingo Warrior gang plus one additional member attacked him this time. The officer in the picket called the sergeant, who had the Plaintiff placed in Prehearing Detention. He was taken to the infirmary and received nothing more than a band-aid. The first time he talked to prison officials about the incident was on June 8, 2006. He talked to the Unit Classification Committee, which kept him isolated until he was transferred to the Michael Unit in late August, 2006.

On July 17, 2007, an order was issued permitting the Plaintiff to proceed with his deliberate indifference to safety claims against Lt. Wayne N. Tucker and Officer Michael R. McDuffie. All remaining claims were dismissed.

Defendants' Motion for Summary Judgment

The Defendants filed a motion for summary judgment (docket entry #61) on October 5, 2007. The Defendants argued that they are entitled to summary judgment based on qualified immunity and Eleventh Amendment immunity. In support of their motion, they submitted affidavits from Lt. Wayne Tucker and Dr. Betty J. Williams, along with life endangerment records, grievance records, Office of the Inspector General records and Officer McDufffie's disciplinary records.

The Defendants specified in their version of the facts that Lt. Tucker interviewed Officer McDuffie in regards to allegations of trafficking and/or trading on May 22, 2006. They agreed that the Plaintiff was attacked by gang members on May 27 and 30, 2006. Inmates Amos, Sanders and Williams were identified by the Plaintiff as the inmates who attacked him on May 27, 2006. Inmates Williams, Grant and Sanders were identified as the inmates who attacked him on May 30, 2006. The

Plaintiff was seen in the Medical Department of the Polunsky Unit on May 30, 2006. He reported that he was beaten savagely by Williams, Grant and Sanders about the face and head with a sock containing a heavy metal object and that he suffered from multiple cuts and gashes. The physical exam revealed three lacerations to the left side of the Plaintiff's face, which were cleaned and covered with band-aids. There was no documentation of loss of consciousness or of an injury to the left eye or surrounding tissues during the exam.

Lt. Wayne Tucker stated in his affidavit that he interviewed Officer McDuffie on May 22, 2006, in regards to allegations of trafficking and/or trading. During the investigation, he told McDuffie to tell the truth about what happened. The investigation included statements from officers. Lt. Tucker stated that he never mentioned the Plaintiff. He never told McDuffie that the Plaintiff was a snitch. He added that he would never place an inmate's life in danger by labeling him a snitch. He had no further involvement with McDuffie after the incident. He added that he has had no involvement with the Plaintiff. He believes that his actions in conducting the investigation were necessary based upon his training and experience.

The Office of the Inspector General compiled a large number of documents during the investigation of the attacks on the Plaintiff. One document included a summary by Sgt. Neal, which provided the following explanation for the attacks on the Plaintiff:

> Offender Sanders alleged that offender Davis approached offender Amos and questioned him about why the Mandingo Warriors had assaulted him on Saturday (5/27/06). Offender Sanders alleged that the conversation became heated and offender Davis reached out and slapped offender Amos. Offender Amos is alleged to have immediately left the area and went to find offender Grant, James . . . to advise him of offender Davis' actions. Offender Grant became enraged with offender Amos for not retaliating against offender Davis for the assault and was alleged to have been heard saying since offender Amos did not assault offender Davis that offender Amos made the Mandingo Warriors look weak.

The records reveal that the Plaintiff was interviewed by an investigator, who felt that the Plaintiff was

being deceptive. The Plaintiff did not identify any of his assailants. The case was administratively closed due to the Plaintiff's uncooperativeness.

McDuffie's disciplinary records reveal that he was reprimanded and received six months disciplinary probation. The Reprimand Form noted that he was interviewed by Lt. Tucker on May 22, 2006, in regards to allegations that he had an inmate bring him cokes and ice cream from the commissary. McDuffie stated that he had refused the commissary. McDuffie told Sgt. Foisie that an inmate had asked him if he wanted something from the commissary and he replied no.

The Defendants argued that the Plaintiff failed to present competent summary judgment evidence linking the investigation into the allegation that McDuffie was engaged in trafficking and trading with the inmate attacks on the Plaintiff. Tucker asserted that he had no personal awareness or involvement in the life endangerment issues involving the Plaintiff. He argued that there is no evidence that he should or did perceive a substantial threat to the Plaintiff's safety as a result of his investigation of McDuffie. He argued that the Plaintiff does not have competent summary judgment evidence supporting a deliberate indifference claim against him. Officer McDuffie noted that the Plaintiff admitted that he had been known as a snitch for awhile. He argued that the competent summary judgment evidence makes it appear that the Plaintiff was attacked due to the gang members' personal feelings towards him, as opposed to an attack organized by McDuffie. McDuffie argued that the Plaintiff's deliberate indifference allegations against him are conclusory.

The Defendants' arguments will be fully explored in the Discussion and Analysis section of this Report and Recommendation.

Plaintiff's Response

The Plaintiff filed a response (docket entry #79) to the motion for summary judgment on November 29, 2007. The Plaintiff initially argued that the motion is void since counsel failed to sign the motion, however, the motion was signed electronically in accordance with the Court's rules. The Plaintiff argued that the second attack would never have occurred if the prison system had applied the Security Threat Group plan against members of the Mandingo Warriors. It is noted that the initial Report and Recommendation (docket entry #18 ) issued in this case fully discussed why the Mandingo Warriors are classified as a click, as opposed to a gang, and are not considered as serious a threat as other groups, such as the Mexican Mafia. That issue has already been resolved.

The Plaintiff again alleged that Defendant Tucker referred to him in investigating Defendant McDuffie. He argued that Tucker's act of labeling him a snitch to McDuffie set into motion a series of events that the Defendants knew or should have known would cause him harm and they took no steps to protect him. The Plaintiff asserted that he was standing outside of the office when Tucker interviewed McDuffie and he heard his name used. He asserted that McDuffie entered into a contract to harm him. He cited Defendants' Exhibit C, pages 20-21. It is noted that page 20 is a Offender Protection Investigation Summary. The document reveals that an investigation was begun after the Plaintiff was identified by Mandingo Warriors as a snitch and attacked. Officer McDuffie was not named on the pages. The Plaintiff also asserted that Officer McDuffie was not at his post when the second attack occurred.

The Plaintiff also challenged the affidavit by Dr. Betty Williams because she never personally examined him. It is noted that Dr. Williams specified that her statement is the product of her review of the Plaintiff's medical records.

Discussion and Analysis

Summary judgment is proper when the pleadings and evidence on file show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party for summary judgment has the burden of proving the lack of a genuine issue as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48. In making this threshold inquiry, the Court must consider that "[s]ummary judgment is proper when, viewed in the light most favorable to the non-moving party, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Smith v. Xerox Corp.*, 866 F.2d 135, 137 (5th Cir. 1989) (citations omitted); Fed. R. Civ. P. 56(c).

Once the movants make a showing that there is no genuine material fact issue to support the nonmovant's case, the nonmovant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); *see also Celotex*, 477 U.S. at 324. Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of

material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson*, 477 U.S. at 257. Summary judgment is proper if the affidavits, depositions, answers, and admissions on file fail to establish the existence of an element essential to the plaintiff's case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. The nonmovant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001); *Ragas v. Koch Gateway Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998).

Courts must employ summary judgment device cautiously. *Jackson v. Procunier*, 789 F.2d 307 (5th Cir. 1986). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir. 1980).

The Defendants argued that they are entitled to Eleventh Amendment immunity. The Eleventh Amendment provides that the State of Texas, as well as its agencies, are immune from liability. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). In *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), the Supreme Court held that neither a state nor a state official is a "person" for purposes of liability under 42 U.S.C. § 1983. On the other hand, a lawsuit may be "brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Aguilar v. Texas Department of Criminal Justice*, 160 F.3d 1052, 1053-54 (5th Cir. 1998). To the extent that the Plaintiff is suing the Defendants in their official capacity, he may seek declaratory and injunctive

relief but he may not obtain compensatory and punitive damages. The Defendants' motion for summary judgment should be granted to the extent that the Plaintiff is suing them in their official capacity for compensatory and punitive damages.

The Defendants also argued that the Plaintiff has not shown that they violated his Eighth Amendment rights. The Eighth Amendment affords prisoners protection against injury at the hands of other inmates. *Smith v. Wade*, 461 U.S. 30 (1983); *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Instead, the standard to employ is whether prison officials were "deliberately indifferent" to the safety needs of an inmate. *Id.*; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Mere negligence on the part of prison officials is not enough. *Id.* at 835. The deliberate indifference standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentional oversights. *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997).

In the present case, the parties do not dispute the fact that the Plaintiff was attacked by members of the Mandingo Warriors on May 27 and 30, 2006. There likewise is no question that Lt. Tucker interviewed Officer McDuffie on May 22, 2006, about allegations of trafficking and trading. Officer McDuffie was disciplined as a result of the investigation into whether he was engaged in trafficking and trading. The problem with this case is that there has been no competent summary

judgment evidence submitted linking the attacks on the Plaintiff with Lt. Tucker's investigation of Officer McDuffie's alleged misconduct. The only evidence presented by the Plaintiff that arguably supports his claim is his statement he overheard Lt. Tucker identify him as a snitch, which Lt. Tucker denies, and his statement that Officer McDuffie told him he was "going to pay for that." It is interesting to note that the Plaintiff testified at the *Spears* hearing that he did not know what Officer McDuffie was talking about. If he had, in fact, overheard Lt. Tucker identify him as a snitch to Officer McDuffie, then the Plaintiff would have had some idea as to why Officer McDuffie was angry at him. Nonetheless, accepting the Plaintiff's statements as true for purposes of summary judgment analysis, these facts are not enough to warrant a trial. The Plaintiff has not presented competent summary judgment evidence showing that either Lt. Tucker or Officer McDuffie had knowledge that members of the Mandingo Warriors were going to attack him. Stated differently, he has not presented competent summary judgment evidence showing that the Defendants knew and disregarded an excessive risk to his safety. The Plaintiff provided nothing more than a conclusory claim that Lt. Tucker's investigation set into motion a series of events that led to the attacks. He acknowledged in his response (page 7) that he is relying on circumstantial evidence. The Defendants, on the other hand, presented competent summary judgment evidence showing that the attacks by the Mandingo Warriors were the product of the group's personal feelings towards the Plaintiff. In particular, the second attack was a response to the Plaintiff's attack on inmate Amos, a member of the Mandingo Warriors. The Defendants correctly argued that the Plaintiff's claims are speculative and conclusory, which are insufficient to avoid summary judgment.

      Finally, the Defendants argued that they are entitled to summary judgment based on qualified immunity. The defense of qualified immunity shields government officials performing discretionary

functions from liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Layne*, 526 U.S. 603, 614 (1999). The doctrine of qualified immunity shields government officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Fraire v. Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992), *citing Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The objective reasonableness of an official's conduct must be measured with reference to the law as it existed at the time of the conduct in question. *Anderson*, 483 U.S. at 639; *Jackson v. City of Beaumont Police Department*, 958 F.2d 616, 620 n. 5 (5th Cir. 1992) (citations omitted). *See King v. Chide*, 974 F.2d 653 (5th Cir. 1992) (discussing qualified immunity in the context of force used against an arrestee). The evaluation of a qualified immunity claim involves a two-step inquiry. *Harper v. Harris County*, 21 F.3d 597, 600 (5th Cir. 1994); *Colston v. Barhnart*, 130 F.3d 96, 99 (5th Cir. 1997). The first step is to determine whether the plaintiff has shown a violation of a clearly established constitutional right. *Id.* The second step requires the court to determine whether the defendant's conduct was objectively unreasonable under existing clearly established law. *Id.*

In the present case, as was noted previously, the Plaintiff has not presented competent summary judgment evidence supporting an Eighth Amendment claim for deliberate indifference to his safety. Moreover, he failed to address the second prong of the summary judgment analysis. He has not shown that the Defendants' conduct was objectively unreasonable under existing clearly established law. Indeed, Lt. Tucker noted that he acted reasonably in investigating the claims made against Officer McDuffie. Moreover, his role in this matter was limited to interviewing Officer McDuffie. Once again, the Plaintiff has not submitted competent summary judgment evidence that

would support a conclusion that the Defendants' actions were objectively unreasonable under existing clearly established law. He presented nothing more than speculation linking the Defendants to the attacks on him.

In conclusion, the Defendants' motion for summary judgment (docket entry #61) should be granted.

<u>Recommendation</u>

It is therefore recommended that the Defendants' motion for summary judgment (docket entry #61) be granted and the complaint be dismissed with prejudice.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in the report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within ten days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto Ass'n.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So **ORDERED** and **SIGNED** this **10** day of **December, 2007.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE